1
2
3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Brooke Lyn Sonia,<br><br>                              Plaintiff,<br><br>            v.<br><br>Karie Rainer, et al.,<br><br>                              Defendants. | Case No. 3:23-cv-5220-RSL-TLF<br><br>REPORT AND<br>RECOMMENDATION<br><br>NOTED FOR AUGUST 27, 2024 |

This matter comes before the Court on Defendants Bart Alplanalp, Bruce Gage, Sara Kariko, Joshua Lewis, Edward Ord, Karie Rainer, Tony Rome, Scott J Russell, Sara Spriggs, and Jeffrey Uttecht's motion for summary judgment. Dkt. 28. Plaintiff, Brooke Sonia, filed two responses to Defendants' motion[1]. Dkts. 34, 37.

Plaintiff brought this case under 42 U.S.C. 1983, alleging violations of her Fourth, Eighth and Fourteenth Amendment rights on the basis that Defendants have applied statutory deductions to her incoming funds. Dkt. 6 (Complaint) at 3, 17-21. Plaintiff further alleges that the Defendants violated her First, Eighth and Fourteenth Amendment rights, and conspired against her when they failed to provide her with permanent hair removal as well as gender affirming surgery as part of the terms of a

---

[1] Plaintiff states she did not receive Defendants' summary judgment motion until April 28, 2024; as a result, she filed her response "hastily" to ensure its timeliness. Dkt. 34 at 12. Plaintiff filed a supplemental or second response on May 22, 2024. Dkt. 37. In light of the delay in Plaintiff receiving Defendants' motion, and Defendants' lack of response on that specific point, the Court will accept Plaintiffs' second response to Defendants' summary judgment motion as timely and will view it in conjunction with her first response.

settlement agreement from a prior case. Dkt. 6 at 3, 13-16. Finally, Plaintiff claims Defendants violated her First, Eighth, and Fourteenth Amendment rights by enrolling her in a substance abuse program. Dkt. 6 at 3, 22-25. Plaintiff appears to allege liability against Defendants Uttecht, Russell, Gage, Alpanalp, Rainer, and Lewis as supervisors, and against Defendants Spriggs, Kariko, Ord and Rome as to their acts or omissions as non-supervisors.

This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court GRANT the Defendants' motion and dismiss Plaintiff's claims against the Defendants with prejudice.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On April 29, 2016, Plaintiff arrived in Department of Corrections (DOC) custody as part of an interstate compact with the New Hampshire DOC. Dkt. 28 at 2; Dkt. 29 (Declaration of Scott Russell) at ¶2 and Exhibit 2. At the time Plaintiff filed her complaint, she was detained at the Washington Corrections Center for Women. Dkt. 6 at 2.

A.  Plaintiff's Gender Dysphoria Treatment

On June 3, 2020, Dr. Meg Manthos issued a Forensic Psychological Evaluation for Gender Affirming Surgery for Plaintiff. Dr. Manthos determined Plaintiff was "competent to make informed decisions about her healthcare," and found that Plaintiff was ready for feminizing genital surgery. Dkt. 30 (Declaration of Karie Rainer) at Exhibit 3.

1    On September 1, 2020, Plaintiff entered into a settlement agreement

2 (Agreement) in *Sonia v. Rainer, et al.*, US District Court No. 3:19-cv-5979-BHS-DWC

3 with Kevin Bovenkamp, Bruce Gage, and Karie Rainer, to receive gender affirming

4 surgery within a reasonable timeframe, consistent with Dr. Manthos's June 3, 2020

5 evaluation. Dkt. 6 at 13;Dkt. 31 (Declaration of Patty Willoughby) at Exhibit 1.The

6 Agreement also provided that Plaintiff "will also have access to utilize a hair removal

7 system in the prison at which she is housed. DOC will determine how access is

8 obtained, whether by appointment scheduled in the prison Health Services unit or by

9 permitting Ms. Sonia to retain the equipment in her cell. DOC will provide access to the

10 hair removal system within 30 days of the signed agreement." *Id.* After the Court signed

11 the parties' stipulated order, the case was dismissed on October 6, 2020. Dkt. 28 at 5.

12    On October 29, 2020, Plaintiff attended her initial surgical consultation with Dr.

13 Stiller's office in Spokane. Dkt. 30 at ¶8. Plaintiff was required to undergo professional

14 hair removal prior to her genital surgery. *Id.* Plaintiff received professional hair removal

15 services on four occasions from Dr. Stiller. *Id.* On July 21, 2021, Dr. Stiller stopped

16 offering the laser hair removal treatment. *Id*.

17    DOC medical staff attempted to locate another hair remover provider in Spokane,

18 Washington, but there were no providers in the area willing to accept incarcerated

19 clients. *Id*. On February 15, 2023, Plaintiff agreed to a zero depth vaginoplasty with Dr.

20 Stiller, as it did not require professional hair removal and received the surgery on May

21 23, 2023; Plaintiff is scheduled for the second step of the surgery in the fall of 2024. *Id*.

22 at ¶9-11. Plaintiff attended a post operation appointment on June 5, 2023, and had a

23 follow up phone conversation on July 3, 2023. *Id*. at ¶11.

24

25

In addition to feminizing genital surgery, Plaintiff was provided access to a personal Intense Pulse Light hair removal device which she was permitted to use in the facility medical unit for the removal of hair on her face, neck and chest areas. *Id.* at ¶12. She attended her first appointment on October 15, 2020 and was scheduled for more than 100 additional appointments through August 17, 2022. *Id.* On May 16, 2023, Plaintiff met with the Gender Affirming Medical Specialist, who referred her for permanent facial hair removal via electrolysis. *Id.* at 13. Since June 2023, Plaintiff has received electrolysis for permanent removal of her facial hair by a licensed provider on a regular basis. *Id.*

Plaintiff claims that defendants Bruce Gage, Tony Rome, and Bart Alpanalp did not provide a gender reassignment surgery and hair removal in a "reasonable time frame" as stated in the Agreement, and thus, violated her rights under the First Amendment, Eighth Amendment, and Fourteenth Amendment. Dkt. 6 at 14; Dkt. 34 at 3. She further asserts the Defendants did not begin their obligation of providing medical care until after she sued to preserve her rights to enforce terms of the Agreement. As a result, Plaintiff alleges that she suffered great emotional distress over the untreated gender dysphoria from not having the breast augmentation and hair removal of the face, neck, and jaw, in violation of her Fourteenth Amendment rights. Dkt. 6 at 13; Dkt. 34, (Declaration of Brooke Sonia) at 5.

B.  Plaintiff's Substance Abuse Evaluation

Plaintiff's Judgment and Sentence from the Stafford County Superior Court stated, the "Court recommends to the Department of Corrections: Drug and alcohol treatment and counseling and sexual offender program at the prison as an express

condition of parole." Dkt. 32 (Declaration of Sarah Spriggs) at Exhibit 2. It further stated Plaintiff, "is to participate meaningfully and complete any counseling, treatment and educational programs as directed by the correctional authority or Probation/Parole Officer." *Id*. In accordance with this, Sara Spriggs, the Substance Abuse Recovery Unit ("SARU") drug and alcohol intake counselor, performed Plaintiff's Substance Use Disorder assessment. Ms. Spriggs is not responsible for deciding placement into Substance Use Programs. *Id*. at ¶5-6.

In the clinical assessment, Spriggs documented a 2018 Washington One assessment that Jason Lewis, Spriggs' supervisor, advised her to place into the assessment as collateral/relevant information. *Id*. at ¶6. Spriggs referenced the 2018 Washington One which stated that Plaintiff "smoked marijuana every day" six months prior to her incarceration. *Id*. Spriggs also included in the report that Plaintiff stated marijuana "has been a demon in [her] life," she had six months or longer sober in the community, and Plaintiff "reports that there were times that [she] walked away from Marijuana." *Id*. at Exhibit 3, 27. Spriggs documented that Plaintiff denied these claims were true and that she never claimed to use marijuana, except for three times when it was prescribed by a doctor. *Id*. at ¶6. Plaintiff's score was based on all information in the assessment, including her interview. *Id*. The assessment was provided to Lewis for review and approval before it was submitted to Central Records. *Id*.

Although Plaintiff completed a Substance Abuse Disorder assessment, defendants assert she will not be provided treatment under the Substance Abuse Recovery Unit. The SARU provides comprehensive continuum of intensive outpatient, intensive inpatient and residential treatment services to qualifying incarcerated

individuals and individuals under Department supervision. Because Plaintiff is considered a "boarder", i.e., an individual received from another jurisdiction, she does not qualify for programming or treatment opportunities under DOC Policy 330.605. *See* Dkt. 36 (Declaration of David Musser) at Exhibit 1.

Plaintiff alleges that she is required to participate in the Substance Abuse Recovery Unit (SARU), and the involuntary participation amounts to an unconstitutional condition of confinement under the Eighth Amendment. Dkt. 6 at 22-25. Plaintiff claims that the programs are a "waste of her time" and redundant which she alleges is cruel and unusual punishment. *Id*. at 25. Plaintiff alleges Spriggs and Lewis intentionally found cause for Plaintiff to attend the SARU when there were numerous inmates taking Suboxone treatment for opioid addiction and were not forced to participate in the program. *Id*. at 24; Dkt. 34 at 9; Declaration of Brooke Sonia, at 2. Plaintiff believes this was an administrative maneuver to accommodate the program and relieve the overcrowded prison and to justify budget needs. *Id*.; Dkt. 37 at 2.

Plaintiff further alleges that her substance use disorder assessment for SARU was in retaliation for her past litigation. Dkt. 6 at 25; Dkt. 37 at 22-34. Plaintiff states she has no drug and alcohol related arrests, convictions, use or abuse, so labeling her as such is libelous, defaming, and slanderous. Dkt. 34, Declaration of Brooke Sonia, at 2.

Plaintiff alleges that the Defendants "fudged" the numbers of women who attend the SARU to incorporate innocents, like herself. Dkt. 6 at 23. Plaintiff believes there should have been an investigation into the matter, and that defendant Ord was suffering side effects of a stroke when inputting the false information. *Id*. Ord was Plaintiff's counselor from 2017-2018 at Stafford Creek Corrections Center. Dkt. 34 at 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C.  Deduction of Funds

Finally, Plaintiff claims that defendants Scott Russell and Jeffery Uttecht knowingly and unlawfully seized her money in violation of the Fourth Amendment and Eighth Amendment. Dkt. 6 at 18; Dkt. 37 at 6; Dkt. 34, at 4. According to RCW 72.09.480 and DOC Policy 200.000, statutory deductions may be applied to incoming funds received by incarcerated individuals, and this policy is applied to incarcerated individuals in DOC custody as part of an interstate compact agreement with another state agency. *See* Dkt. 29 (Declaration of Scott Russell) at Exhibit 1. Plaintiff is in DOC custody as part of an Interstate Compact with the New Hampshire DOC. *See id.* at Exhibit 2.

Plaintiff alleges that each Defendant acted in concert with each other to intentionally deprive her of her money, after being notified multiple times in written grievances. *Id.* at 18; Dkt. 37 at 18-20. Plaintiff has filed grievances on multiple occasions. Dkt. 6 at 23; Dkt. 37 at 6, 18-20, 35, 96-99, 107, 111-114. On August 25, 2021, Plaintiff filed a grievance regarding the allegedly unlawful seizure of her money, and the grievance was disregarded as a "Go ahead and sue me attitude." *Id.* at 21. Plaintiff believes the policy is overbroad and cannot override the constitutional guarantees of the Fourth Amendment that prohibits the arbitrary seizure of property.

Plaintiff requests $400,000 in damages, and injunctive relief requiring Defendants return all deductions taken from her funds, permanent hair removal of the face, neck, jaw, chest, hands and wrists as well as breast augmentation surgery and remove the requirement for any substance abuse treatment. Dkt. 6 at 10.

1

DISCUSSION

2

**A. Standards**

3

1. <u>Summary Judgment Standard</u>

4

Summary judgment is supported "if the pleadings, the discovery and disclosure

5

materials on file, and any affidavits, show that there is no genuine issue as to any

6

material fact and that the movant is entitled to judgment as a matter of law." Federal

7

Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to

8

demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.*

9

*Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is

10

presented when there is sufficient evidence for a reasonable jury to return a verdict for

11

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

12

A "material" fact is one which is "relevant to an element of a claim or defense and

13

whose existence might affect the outcome of the suit," and the materiality of which is

14

"determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*

15

*Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the Court considers a

16

motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and

17

all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. Yet the Court is not

18

allowed to weigh evidence or decide credibility. *Anderson*, 477 U.S. at 255. If the

19

moving party meets their initial burden, an adverse party may not rest upon the mere

20

allegations or denials of his pleading; his or her response, by affidavits or as otherwise

21

provided in FRCP 56, must set forth specific facts showing there is a genuine issue for

22

trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-

23

serving nature. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

24

25

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

2. <u>42 U.S.C. 1983</u>

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Government officials are entitled to qualified immunity in suits against them for an alleged violation of a constitutional right unless a plaintiff makes a two-part showing. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The plaintiff must show that officials violated a constitutional right *and* that this right was "clearly established." *Id*. A court may consider the two prongs in whatever order it chooses. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the

plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether the defendant's conduct violated a constitutional right and (2) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

As discussed below, viewed in light most favorable to the Plaintiff, the facts do not show that the Defendants' acts violated Plaintiff's Constitutional rights. Accordingly, the Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

**B. Personal Participation**

Defendants argue Plaintiff has failed to establish the personal participation of several of the named defendants in the alleged violations of her constitutional rights. Specifically, Defendants contend Plaintiff's claims fail against defendants Russell, Kariko, and Rome, and should be dismissed for failure to show their personal participation in Plaintiff's alleged constitutional violations.

To obtain relief against a defendant under section 1983, a plaintiff must prove each government official defendant through their own individual actions  has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); *Peck v. Montoya,* 51 F.4th 877, 890 (9th Cir. 2022); *Arnold v. International Business Machines Corp.,* 637 F.2d 1350,1355 (9th Cir. 1981). A supervisor is liable for acts of subordinates when the supervisor either participates in or directs subordinates in committing violations, or knows of the violations

being committed by subordinates and fails to take action to prevent them. *Vasquez v. County of Kern,* 949 F.3d 1153, 1166 (9th Cir. 2020).

Plaintiff must assert sufficient facts to show that a defendant whose individual actions do not rise to the level of a constitutional violation, was nevertheless an integral participant in the violation of plaintiff's federal statutory or constitutional rights, based on facts that establish either: "(1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck,* 51 F.4th at 891. Supervisors may not, however, be held liable merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (citing *Jones v. Williams*, 297 F.3d 930, 936–37 (9th Cir. 2002)).

Liability cannot be imposed based on a team effort – the plaintiff must allege facts to show more than but-for causation – plaintiff must assert facts regarding each individuals' knowledge or intent, and each individual's acts or failure to act. *Peck v. Montoya,* 51 F.4th at 890-891. A mere bystander cannot be liable under section 1983; "an official whose individual actions do not themselves rise to the level of a constitutional violation may be held liable under section 1983 only if the official is an integral participant in the unlawful act." *Id.* at 889 (citations and internal quotation marks omitted).

Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988). A plaintiff must set forth the specific factual basis supporting his claim for each defendant's liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

To prevail on a claim against a defendant that acts, or omits to act, in the role of supervisor, Plaintiff would be required prove each of the following elements by a preponderance of the evidence, according to the Ninth Circuit's Pattern Civil Jury Instructions for civil rights actions under § 1983:

1.    the supervisory defendant acted under color of state law;

2.    the [act[s]] [failure to act] of the supervisory defendant's subordinate[s] [*name[s]*] deprived the plaintiff of particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions;

3.    [the supervisory defendant directed subordinate[s] in the [act[s]] [failure to act] that deprived the plaintiff of these rights;]

*or*

[the supervisory defendant set in motion a series of acts by  subordinate[s], or knowingly refused to terminate a series of acts by  subordinate[s], that the supervisor knew or reasonably should have known would cause the subordinate[s] to deprive the plaintiff of these rights;]

*or*

[(a)    the supervisory defendant knew that the subordinate[s] were engaging in these act[s] and knew or reasonably should have known that the subordinate['s][s'] conduct would deprive the plaintiff of these rights; and

(b)    the supervisory defendant failed to act to prevent the subordinate[s] from engaging in such conduct;]

*or*

[(a)    the supervisory defendant disregarded the known or obvious consequence that a particular training deficiency or omission would cause [his][her] subordinate[s] to violate the plaintiff's constitutional rights; and

(b)    that deficiency or omission actually caused the subordinates to deprive the plaintiff of plaintiff's constitutional rights;]

*or*

[the supervisory defendant engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others;]

*and*

4.    The supervisory defendant's conduct was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

Ninth Circuit Civil Pattern Jury Instruction 9.4 (updated December 2023).

Plaintiff appears to claim defendant Russell was involved in making decisions related to deductions. Dkt. 6 at 9. Defendant Russell states in their declaration, that as Deputy Assistant Secretary of the Health Services Division their job responsibilities did not include any oversight of inmate banking and they did not have any decision-making authority regarding application of deductions of incoming incarcerated individual funds. Dkt. 29 at ¶3. Although Plaintiff names Russell as a defendant for his supervisory role, she fails to show either personal involvement in the constitutional deprivation or that Russell was involved less directly -- by supervising others as described in the other factual scenarios (see Ninth Circuit Civil Pattern Instruction 9.4, above) that would show a sufficient causal connection between Russell's alleged wrongful conduct and the constitutional violation. *See Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022). Thus,

1  Plaintiff's Fourth, Eighth and Fourteenth Amendment claims against Russell should be

2  DISMISSED.

3          Defendants further argue Plaintiff failed to present facts to demonstrate either

4  defendants Kariko or Rome had the ability to make decisions regarding her access to

5  hair removal devices or gender affirming surgery. Plaintiff claims Defendants Rome and

6  Kariko violated her rights "to make and enforce contracts." Dkt. 6 at 3. She further

7  claims Defendant Rome conspired to enter into the Agreement and "never fulfilled" his

8  contractual obligations. Dkt. 6 at 14. Neither Drs. Kariko nor Rome were parties to the

9  Agreement, however. Plaintiff states only conclusory allegations against Defendants

10  Kariko and Rome, and has failed to specifically assert facts that would show how Dr.

11  Kariko or Dr. Rome violated her constitutional rights; thus, Plaintiff's claims against

12  Defendants Kariko and Rome should be DISMISSED.

13          To the extent Plaintiff also raises a conspiracy claim against Defendants, Plaintiff

14  simply alleges Defendants conspired to deprive her of the terms of the Agreement

15  without stating facts to support this allegation. "A mere allegation of conspiracy without

16  factual specificity is insufficient" for Section 1985(3) liability. *Karim-Panahi v. Los*

17  *Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Even accepting as true all of

18  Plaintiff's assertions in the complaint, there are no specific factual allegations of a

19  plausible conspiracy against Defendants; thus, Plaintiff's conspiracy claim under

20  Section 1985 should be DISMISSED[2].

21

22  [2] Plaintiff also makes a vague claim regarding her placement in restricted housing after receiving disciplinary infractions as a result of a "false report" drafted by "Defendant Vincent". Dkt. 6 at 22. Vincent

23  is not a named Defendant; she provides no information on how any of the named Defendants were responsible for making decisions related to her housing placement. To the extent the Court treats this as

24  a separate Eighth Amendment claim, it should be dismissed because she fails to allege any of the Defendants personally participated in her placement in restricted housing.

25

**C.  Plaintiff's Claims Relating to Gender Affirming Treatment**

Plaintiff alleges Defendants violated her First, Eighth and Fourteenth Amendment rights with respect to how her gender affirming treatment was handled after the Settlement Agreement was entered into. Specifically, Plaintiff contends Defendants violated her rights by delaying the scheduling of her surgery.

1.  <u>Plaintiff's Eighth and Fourteenth Amendment Claims</u>

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

The defendants must have known of and disregarded an excessive risk to the plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is shown when prison officials consciously disregard an excessive risk of harm to an inmate's health or safety. *Id.* at 838–40. It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause[.]" *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

1   Deliberate indifference "may appear when prison officials deny, delay or

2   intentionally interfere with medical treatment, or [ ] may be shown by the way in which

3   prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390,

4   394 (9th Cir. 1988). However, delay in providing a prisoner treatment, standing alone,

5   does not constitute an Eighth Amendment violation unless the delay causes harm. *See*

6   *McGuckin,* 974 F.2d at 1059; *Amarir v. Hill*, 243 F. App'x. 353, 354 (9th Cir. 2007).

7   Finally, a mere difference of opinion about treatment between plaintiff and prison

8   medical authorities "does not give rise to a § 1983 claim." *Franklin v. St. of Or., State*

9   *Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). "Deliberate indifference is a high

10  legal standard. A showing of medical malpractice or negligence is insufficient to

11  establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*,

12  391 F.3d 1051, 1060 (9th Cir. 2004). A prisoner must instead show the chosen course

13  of treatment "was medically unacceptable under the circumstances," and was chosen

14  "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v.*

15  *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by*

16  *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *see also Toguchi*, 391 F.3d at

17  1058. Senior prison administrators cannot be held vicariously liable for the alleged acts

18  of prison medical personnel. *Hamby v. Hammond*, 821 F.3d 1085, 1093 n.4 (9th Cir.

19  2016) ("We note that Secretary Warner cannot be held vicariously liable under § 1983

20  for any violations committed by prison medical personnel"); *Hunt v. Dental Dep't*, 865

21  F.2d 198, 200 (9th Cir. 1989) (State Department of Corrections Director cannot be held

22  vicariously liable for the fault of prison personnel); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d

23

24

25

Cir. 2004) ("If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

Defendants do not dispute that Plaintiff's gender dysphoria is a serious medical need. Dkt. 30 at ¶4 (A diagnosis of Gender Dysphoria is considered Level 2 under the Health Plan which finds medically necessary care under certain circumstances). Indeed, the Ninth Circuit has held that it is. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) ("Gender dysphoria is a 'serious ... medical condition' that causes 'clinically significant distress'—distress that impairs or severely limits an individual's ability to function in a meaningful way."). Instead, the issue is whether Plaintiff has adduced evidence establishing that Defendants acted (or failed to act) with the requisite deliberate indifference in delaying her gender affirming surgery.

While Plaintiff's surgery did not happen until 2023, Defendants have submitted unrebutted evidence showing this scheduling difficulty was a result of the limited number of practitioners in the field that accept prisoner patients and Plaintiff's specific type of feminizing genital surgery. Dkt. 30 at ¶8-11. Further, during this period it was often necessary for incarcerated individuals to wait nearly three years before the actual surgery as a result of delays caused by the COVID-19 pandemic. *Id.* at ¶5. Consistent with the terms of the Agreement, Plaintiff was provided access to a hair removal device and professional hair removal treatment, and has received electrolysis for permanent removal of her facial hair on a regular basis. *Id.* at ¶12-13.

There is no genuine dispute of material fact regarding the cause of the delay (between Plaintiff's consultation and her surgery date) -- the facts show delay was due to COVID-19 issues and lack of available medical providers for this specific procedure.

As the Seventh Circuit has recognized, "prisons have limited resources, and that fact makes some delay inevitable." *Mitchell v. Kallas*, 895 F.3d 492, 500 (7th Cir. 2018).

The Court should find there is no genuine dispute of material fact regarding deliberate indifference; thus, Plaintiff's Eighth Amendment claim should be DISMISSED.

Further, to the extent Plaintiff is raising a Fourteenth Amendment claim for inadequate medical care, Plaintiff's claim should be DISMISSED. Plaintiff is a convicted inmate; the Eighth Amendment, not the Fourteenth Amendment, applies to her claim. *See Gordon v. Cnty. of Orange,* 888 F.3d 1118, 1124 (9th Cir. 2018) (explaining that inadequate medical care claims arise under the Eighth Amendment's Cruel and Unusual Punishment Clause when brought by post-conviction inmates and the Fourteenth Amendment's Due Process Clause when brought by pretrial detainees); *Norbert v. Cty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) ("For plaintiff[s] who [are] convicted and awaiting sentencing, the Eighth Amendment supplies the relevant standard").

      2.  <u>Plaintiff's First Amendment Claim</u>

Plaintiff further claims the Settlement Agreement is "enforceable under the First Amendment." Dkt. 6 at 14, 16.

To plead a plausible claim of First Amendment violation, the allegations in the Complaint must establish that Defendants "took action that would chill or silence a person of ordinary firmness from future First Amendment activities. *Martin v. Naval Criminal Investigative Serv.,* 539 F. App'x 830, 831 (9th Cir.2013) (internal quotations and citations omitted); *see also Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir.1999). The deterrence of protected activity must be a substantial

1   and motivating factor in Defendants' conduct. *See Martin,* 539 F. App'x at 831 (*citing*

2   *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994)).

3          Plaintiff makes vague allegations that Defendants' actions resulted in First

4   Amendment violations. She does not allege any facts showing Defendants took action

5   that chilled or silenced Plaintiff from future First Amendment activities. Thus, Plaintiff's

6   First Amendment claim should be DISMISSED.

7          It appears Plaintiff is asking this Court to enforce terms of the Settlement

8   Agreement, yet this Court does not have jurisdiction to do so. In *Kokkonen v. Guardian*

9   *Life Ins. Co.,* 511 U.S. 375, 379–81 (1994), the Supreme Court held that federal courts

10   do not have inherent or ancillary jurisdiction to enforce a settlement agreement simply

11   because the subject of that settlement was a federal lawsuit. When the initial action is

12   dismissed, federal jurisdiction terminates. *Id.* A motion to enforce the settlement

13   agreement is a separate contract dispute requiring its own independent basis for

14   jurisdiction. *Id.*

15          Therefore, "absent an express retention by a district court of jurisdiction to

16   enforce a settlement agreement reached in a case pending before it, such 'enforcement

17   of the settlement agreement is for the state courts, unless there is some independent

18   basis for federal jurisdiction.' " *Camacho v. City of San Luis,* 359 F. App'x 794, 798 (9th

19   Cir.2009) (quoting *Kokkonen,* 511 U.S. at 381–82). Plaintiff has not provided any facts

20   or legal authority to support a request for this Court to review or enforce the settlement

21   agreement that was entered into for a case before a different District Judge.

22   **D. Plaintiff's Claims Relating to Her Funds**

23         1. <u>Plaintiff's Eighth Amendment Claim</u>

24

25

1    Plaintiff asserts that applying statutory deductions to her incoming funds amounts

2    to an Eighth Amendment violation. She further argues the statutory deductions do not

3    apply to her because she was sentenced in New Hampshire, not Washington.

4    The Excessive Fines Clause of the Eighth Amendment limits the Defendants'

5    " 'power to extract payments, whether in cash or in kind, "as punishment for some

6    offense." ' " *United States v. Bajakajian,* 524 U.S. 321, 328 (1998) (quoting *Austin v.*

7    *United States,* 509 U.S. 602, 609–10 (1993)). "The notion of punishment, as we

8    commonly understand it, cuts across the division between the civil and the criminal

9    law...." *United States v. Halper,* 490 U.S. 435, 447–48 (1989); *see also Louis v.*

10   *Commissioner,* 170 F.3d 1232, 1236 (9th Cir.1999) ("Even a civil sanction may be

11   punitive for Eighth Amendment purposes."), *cert. denied,* 528 U.S. 1115 (2000).

12   Two questions are pertinent when determining whether the Excessive Fines

13   Clause has been violated: (1) Is the statutory provision a fine, *i.e.,* does it impose

14   punishment? and (2) If so, is the fine excessive? *See Austin,* 509 U.S. at 619, 622.

15   RCW 72.09.480 (the "Statute") authorizes a deduction of 35% from all funds

16   received by inmates from outside sources. The Ninth Circuit has held the deduction

17   from inmate funds are not excessive, and thus, does not violate the Eighth Amendment.

18   *Wright v. Riverland*, 219 F.3d 905 (9th Cir. 2000).

19   The deductions apply to Plaintiff because she is in custody of the Washington

20   DOC. Under RCW 72.09.015(17) an incarcerated individual is defined as: a person

21   "committed to the custody of the department, including but not limited to persons

22   received from another state…". Further, pursuant to the Interstate Corrections Impact

23   between Washington and New Hampshire, "the receiving state shall be responsible for

24

25

the disbursement of inmate funds *per the law of the receiving state*" (emphasis added). Dkt. 29 at Exhibit 2.

Therefore, the fact that Plaintiff was sentenced in New Hampshire does not preclude Plaintiff from having to comply with Washington's statute regarding the deduction of inmate funds.

There is no genuine dispute of material fact regarding whether the statutory deductions amount to an excessive fine; thus, the Court should DISMISS Plaintiff's Eighth Amendment claim.

2.  Plaintiff's Fourth Amendment Claim

Plaintiff's Fourth Amendment claim as to her funds fails as a matter of law because prisoners do not have a Fourth Amendment right to be free from the seizure of their personal property. *Hudson v. Palmer*, 468 U.S. 517, 536 (1984); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989), cert. denied, 493 U.S. 868(1989). A prisoner is not protected by the Fourth Amendment against the seizure, destruction, or conversion of his property. *Taylor*, 871 F.2d at 806.

"Imprisonment does not automatically deprive an inmate of all constitutional rights." *Goldhaber v. Higgins*, 576 F. Supp.2d 694, 716 (W.D. Pa. 2007) (citing *Beard v. Banks*, 548 U.S. 521 (2006)). "Nevertheless, due to the very nature of incarceration, it is difficult to characterize a search or seizure occurring in the prison context as 'unreasonable' within the meaning of the Fourth Amendment." *Goldhaber*, 576 Supp.2d at 716 (citing *Palmer*, 468 U.S. at 525–526, 104 S.Ct. 3194.).

Here, other than claiming that Defendants have unlawfully seized her property, i.e., her money, Plaintiff has not identified how this seizure was unreasonable in the

context of the Fourth Amendment. Plaintiff's allegation against Defendants is

conclusory; thus, Plaintiff's Fourth Amendment claim should be DISMISSED.

### 3.  Plaintiff's Fourteenth Amendment Claim

Plaintiff further argues the statutory deductions of her funds violates the Fourteenth

Amendment.

Substantive due process claims have been limited generally to "matters relating to

marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510

U.S. 266, 272 (1994). To establish a procedural due process claim, Plaintiff must allege

a constitutionally protected property interest, deprivation by the government, and lack of

due process. *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993). The

Ninth Circuit in *Wright v. Riveland* held an inmate has a property interest in his incoming

funds. 219 F.3d 905, 913 (9th Cir. 2000). The deprivation is pursuant to a duly

authorized legislative action. DOC provides a grievance process for inmates. A

substantive due process violation occurs when the state actor "violates fundamental

fairness and is action "is shocking to the universal sense of justice." *Hiivala v. Wood,*

195 F.3d 1099, 1104 (9th Cir.1999) (citation omitted). In order to prove a substantive

due process violation, Plaintiff must show Defendants' action (deductions from funds)

was "clearly arbitrary and unreasonable, having no substantial relation to the public

health, safety, or morals, or general welfare." *Kawaoka v. City of Arroya Grande,* 17

F.3d 1227, 1234 (9th Cir.1994) (substantive due process claims regarding government

action are reviewed under a rationality standard).

Although a legislative action must be rationally related to a legitimate governmental

interest, the court does not require that the government's legislative action actually

promote its stated purpose. Rather, the court looks at whether "the governmental body *could* have had no legitimate reason for its decision." *Id.* at 1234 (citing *Levald v. City of Palm Desert,* 998 F.2d 680, 690 (9th Cir.1993). If the legislative action advances any legitimate public purpose, it must be upheld. *Id.*

Here, Plaintiff simply states that the deduction of her funds was arbitrary and unreasonable. The deduction of funds from incarcerated individuals serves a legitimate government interest. *See McCoy v. Clarke*, No. CV-05-5036-AAM, 2005 WL 1979141, at *4 (E.D. Wash. Aug. 16, 2005) (The fact that the deducted money does not go directly to his victims, or to his state (Maryland), does not defeat the legitimate interest Washington has in assisting crime victims in general, regardless of their states of residence).

Plaintiff provides evidence that she has accessed that grievance process. Dkt. 37 at 6, 18-20, 35, 96-99, 107, 111-114. This process has been found to be an adequate post-deprivation remedy for unauthorized deductions. *Wright*, 219 F.3d at 918 (withdrawals in excess of actual incarceration costs may be redressed through established prison grievance process and by filing a tort claim in state court).

The grievance process and state law remedies provide adequate post-deprivation due process.

Thus, Plaintiff's Fourteenth Amendment claims should be DISMISSED.

**E. Plaintiff's Claims Relating to Relating to Substance Abuse Treatment**

### 1. Plaintiff's Eighth Amendment Claim

Finally, Plaintiff asserts that requiring her to participate in substance abuse treatment amounts to an unconstitutional confinement under the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. *Morgan*, 465 F.3d at 1045 (quotation marks and citations omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, Defendants completed Plaintiff's assessment upon the recommendation of the Court, documented in Plaintiff's Judgment and Sentence. Plaintiff's Judgment and Sentence from the Stafford County Superior Court stated, the "Court recommends to

the Department of Corrections: Drug and alcohol treatment and counseling and sexual

offender program at the prison as an express condition of parole." Dkt. 32 (Declaration

of Sarah Spriggs) at Exhibit 2. It further stated Plaintiff, "is to participate meaningfully

and complete any counseling, treatment and educational programs as directed by the

correctional authority or Probation/Parole Officer." *Id.* In accordance with this, Sara

Spriggs, the Substance Abuse Recovery Unit ("SARU") drug and alcohol intake

counselor, performed Plaintiff's Substance Use Disorder assessment. Ms. Spriggs is not

responsible for deciding placement into Substance Use Programs. *Id.* at ¶5-6.

 Plaintiff failed to show the assessment completed by Defendants created prison

conditions constituting "unnecessary and wanton infliction of pain." Given that Plaintiff's

claim essentially stems from her disagreement with the assessment and she failed to

show that her participation in the assessment amounts to an extreme deprivation,

Plaintiff's Eighth Amendment claim should be DISMISSED.

  2.  <u>Plaintiff's Fourteenth Amendment Claim</u>

 Finally, Plaintiff asserts that she should have been provided with a hearing to

dispute the information in the assessment prior to being referred to substance abuse

treatment.

 "The requirements of procedural due process apply only to the deprivation of

interests encompassed by the Fourteenth Amendment's protection of liberty and

property." *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). State statutes and

prison regulations may grant prisoners liberty interests sufficient to invoke due process

protections. *Meachum v. Fano,* 427 U.S. 215, 223–27 (1976). However, the Supreme

Court has significantly limited the instances in which due process can be invoked. In

1    *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court "refocused the test for

2    determining the existence of a liberty interest away from the wording of prison

3    regulations and toward an examination of the hardship caused by the prison's

4    challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v.*

5    *Dupnik,* 75 F.3d 517, 522 (9th Cir.1996) (citing *Sandin,* 515 U.S. at 484, 115 S.Ct.

6    2293).

7          Although Plaintiff has completed an assessment for substance abuse, pursuant

8    to DOC's boarder policy she will not be required to undergo any treatment. Plaintiff must

9    allege facts to show "a dramatic departure from the basic conditions" of her confinement

10   that would give rise to a liberty interest, in order to bring a plausible claim a violation of

11   due process. *Sandin v. Conner,* 515 U.S. 472, 485 (1995). Even under a liberal

12   construction of the Complaint, Plaintiff has not alleged facts that would show undergoing

13   the Substance Abuse assessment was a dramatic departure from the conditions of the

14   general population. The Substance Abuse program does not have the effect of keeping

15   an incarcerated individual in custody longer than her minimum sentence. *See* Dkt. 32 at

16   ¶7.

17         There is no genuine dispute of material fact regarding whether Plaintiff's rights

18   under the Fourteenth Amendment were violated by the Substance Abuse assessment.

19   Plaintiff's Fourteenth Amendment claim should be DISMISSED.

20                                    <u>CONCLUSION</u>

21         Based on the foregoing discussion, the Court recommends that Defendants'

22   motion for summary judgment be GRANTED with respect to Plaintiff's claims. A

23   proposed order accompanies this Report and Recommendation.

24

25

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on August 27, 2024, as noted in the caption.

Dated this 12th day of August, 2024.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge